IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOUVERT S.,[1] ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> LEE DUDEK, ) <br> Acting Commissioner of Social Security,[2] ) <br> ) <br> Defendant. ) | No. 23 C 15112 <br><br> Magistrate Judge Gabriel A. Fuentes |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court is Louvert S.'s memorandum requesting the Court reverse and remand the Administrative Law Judge's ("ALJ") decision denying his application for supplemental security income (D.E. 12) and Defendant's motion to affirm the ALJ's decision (D.E. 13).

**I.     Procedural History**

Plaintiff applied for supplemental security income ("SSI") on December 2, 2014, alleging a disability onset date of December 18, 2012, which Plaintiff later amended to his application date. (R. 605.) The first ALJ decision, in 2017, was remanded by the U.S. District Court (R. 539), and the second ALJ decision, in 2021, was remanded by the Appeals Council. (R. 718-21.) A new ALJ held a hearing on February 3, 2023, and issued a written decision on April 27, 2023, denying

---

[1] The Court in this order is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. To the extent the Court uses pronouns in this order, the Court uses those pronouns used by the parties in their memoranda.

[2] The Court substitutes Acting Commissioner Lee Dudek for his immediate predecessor, Michelle A. King, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On January 13, 2025, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 20, 22.)

Plaintiff's application and finding him not disabled under the Social Security Act (the "Act").[4] (R. 539-55.) This appeal is of that final decision.

## II. The 2023 ALJ Decision

The ALJ applied the Social Security Administration's ("SSA") five-step sequential evaluation process to Plaintiff's claims. At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date of December 2, 2014. (R. 541.) At Step Two, the ALJ determined that Plaintiff had the severe impairments of anxiety, post-traumatic stress disorder ("PTSD"), bipolar disorder, obesity, depression, osteoarthritis of the bilateral knees, osteoarthritis of the lumbar spine, and opioid use. (R. 542.) At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments which meet or medically equal any Listing. (R. 542-54.) The ALJ assessed Plaintiff as having the residual functional capacity ("RFC") to perform light work with additional limitations as follows:

> lifting/carrying 20 pounds occasionally and 10 pounds frequently, standing/walking six of eight hours and sitting six of eight hours. However, the claimant also has the following additional limitations: no climbing ladders, ropes or scaffolds, unprotected heights or hazardous machinery; occasional climbing stairs and ramps, stooping, kneeling, crouching and crawling; occasional push/pull with the right lower extremity.

(R. 544.)[5] At Step Four, the ALJ found that Plaintiff had no past relevant work. (R. 553.) Based on the vocational expert's testimony at the hearing, at Step Five, the ALJ determined that with his RFC, Plaintiff would be able to perform a significant number of jobs in the national economy, and thus that he was not disabled under the Act. (R. 554.)

---

[4] The Appeals Council subsequently denied review of the opinion (R. 529-32), making the ALJ's decision the final decision of the Commissioner. *Bertaud v. O'Malley*, 88 F.4th 1242, 1244 (7th Cir. 2023).

[5] Additional limitations pertaining to Plaintiff's mental impairments were also presented by the ALJ, but those limitations have been omitted here, as Plaintiff does not raise any issue with the ALJ's assessment of his mental impairments on appeal. The Court limits its discussion to Plaintiff's physical impairments.

2

**III. Legal Standard**

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. As the Seventh Circuit has made clear, ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). "All we require is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Id*. at 1054; *see Thorlton v. King*, No. 24-1852, 2025 WL 453122, at *1 (7th Cir. Feb. 11, 2025) (reiterating that Seventh Circuit "review proceeds with a light touch – not holding ALJs to an overly demanding evidentiary standard and in turn reinforcing that claimants bear the affirmative burden of proving their disability"). The Seventh Circuit has clarified that district courts, on review of ALJ decisions in Social Security appeals, are subject to a similar minimal articulation requirement: "A district (or magistrate) judge need only supply the parties . . . with enough information to follow the material reasoning underpinning a decision." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024). The district court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez v. O'Malley*, 96 F.4th 1016, 1021 (7th Cir. 2024) (internal quotations omitted).

**IV.     Analysis**

Plaintiff's sole argument is that the ALJ erred by failing to evaluate adequately the opinion of the agency examining physician, Haris Aleem, M.D. under the substantial evidence standard. (D.E. 12: Pl. Mem. in Supp. Of Mot. For Summ. J. ("Pl. Mem.") at 8.)

**A.     The ALJ's Evaluation of the Opinion Evidence from the Agency Examining Physician Was Supported by Substantial Evidence.**

In his memorandum, Plaintiff contends the ALJ "erred in failing to provide a logical and well-supported rational[e] for rejecting the assessment of the agency's examining physician, Dr. Aleem, and [the ALJ's] finding that [Plaintiff] could sustain the walking and standing demands of light work is not supported by substantial evidence." (Pl. Mem. at 8.) Under 20 C.F.R. § 404.1520c, the most important factors for the ALJ to evaluate in determining the persuasiveness of medical opinion evidence are the supportability and consistency both internally and with the record as a whole. The ALJ must also consider the treating practitioner's relationship with the claimant, specialization, as well as other factors, but an explanation of the ALJ's consideration of these additional factors does not need to be presented within the ALJ's opinion. 20 C.F.R. § 404.1520c(b)(2).

Dr. Aleem is board-certified in Internal Medicine. (R. 1747.) Dr. Aleem performed a consultative examination of Plaintiff on September 24, 2022, in connection with his application for benefits. (R. 1737-47.) Dr. Aleem's clinical impressions noted Plaintiff had osteoarthritis of both knees, "likely" osteoarthritis of the lumbar spine, uncontrolled hypertension, and a history of PTSD. (R. 1740-41.) Dr. Aleem opined, in relevant part, that Plaintiff could lift and carry up to 10 pounds occasionally but never more than 10 pounds; sit for at most three hours at a time for a total of four hours in an eight-hour workday; stand for 30 minutes at a time for a total of one hour in an eight-hour workday; walk for 10 minutes at a time for a total of one hour in an eight-hour workday;

4

frequently reach overhead, reach all directions, handle, finger, feel, and push and pull with his left and right hands; occasionally climb stairs and ramps, balance, and stoop; and never climb ladders or scaffolds, kneel, crouch, or crawl. (R. 1742-45.) Dr. Aleem also opined that Plaintiff cannot walk a block at a reasonable pace on rough or uneven surfaces and cannot climb a few steps at a reasonable pace with the use of a single handrail. (R. 1747.) Finally, Dr. Aleem opined that Plaintiff does not require a cane to ambulate effectively. (R. 1743.)

i. **Supportability**

Contrary to Plaintiff's argument, the ALJ did not simply "reject [Dr. Aleem's] report on the grounds that it is based on [a] one-time examination," (Pl. Mem. at 10), but rather the ALJ discussed how Dr. Aleem's notes did not support the extent of limitations he opined for Plaintiff. (R. 547-48.) The supportability factor within 20 C.F.R. § 404.1520c provides, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Here, substantial evidence supported the ALJ's conclusion that Dr. Aleem's consultative examination report did not support his opined limitations.

First, the ALJ determined that Dr. Aleem's opinion that Plaintiff would be limited to frequent hand use with both hands, was not supported by the results of his examination of Plaintiff. (R. 1742.) Dr. Aleem's report states Plaintiff was able to make a fist and oppose fingers and that "[t]he range of motion of the shoulders, elbows and wrists is full, free and painless," and Dr. Aleem noted Plaintiff's grip strength was normal and that Plaintiff had 5/5 strength in both upper extremities. (R. 1740.) In considering Dr. Aleem's consultative examination report against his opined lifting/carrying limitations for Plaintiff, the ALJ determined that the limitations are "not

5

supported by the corresponding examination findings of 5/5 strength in the upper extremities." (R. 548.) As to Plaintiff's manipulative limits, the ALJ determined there was no support for those as well, "including the examination findings of normal grip strength, no loss of sensation, the ability to make a fist and oppose fingers, and 5/5 strength in the upper extremities." (*Id.*)[6] Ultimately, Plaintiff bears the affirmative burden of proving disability by producing medical evidence. *Thorlton*, 2025 WL 453122, at *2; *Durham v. Kijakazi*, 53 F.4th 1089, 1096 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 905 (7th Cir. 2021). The ALJ determined that Plaintiff failed to produce medical evidence of the necessity of the limits Dr. Aleem opined, and the ALJ's determination that Dr. Aleem's assessment of Plaintiff's lifting/carrying and manipulative limits were unsupported by his own notes was supported by substantial evidence.

Next, the ALJ determined that the significant restrictions on Plaintiff's sitting, standing, and walking limits that Dr. Aleem assessed (R. 1743) were unsupported by Dr. Aleem's examination and inconsistent with the remainder of the record. Dr. Aleem recorded, and the ALJ discussed, that Plaintiff had full range of motion in all joints except for the right knee. (R. 548, 1740.) Dr. Aleem also noted, and the ALJ discussed, that Plaintiff was able to walk and stand heel-to-toe, as well as perform knee squats. (*Id.*) Contrary to Plaintiff's allegation that the ALJ stated "there was no evidence of a gait abnormality" (D.E. 15: Pl. Reply in Supp. Of Mot. For Summ. J. ("Pl. Reply") at 5), the ALJ discussed how Dr. Aleem made note of Plaintiff's slow and limping gait, and the ALJ compared that note by Dr. Aleem with the finding that Plaintiff had full range of motion, aside from the right knee, and could walk 50 feet without an assistive device. (R. 548.) The ALJ also properly considered and discussed that Plaintiff had only "conservative treatment"

---

[6] Notably, Plaintiff's application for benefits did not list or allude to any medical condition of the upper extremities at all. (R. 174, listing Plaintiff's conditions as "Ptsd, pain in knees, high blood pressure".) In fact, Plaintiff makes a single, cursory mention of his lift/carry limit of 10 pounds but makes no mention of how Dr. Aleem's report supported that finding. (Pl. Mem. at 9.)

of pain medication, a steroid injection to the right knee, knee brace, and physical therapy. (R. 546, 548.) These observations from the ALJ, in tandem with Plaintiff's normal gait in June 2022 (R. 547) as well as the lack of imaging substantiating the extent of standing/walking/sitting limits (R. 548), led the ALJ to conclude that Plaintiff "is active" and "the physical exams fail to document any significant gait abnormality" meriting a more restrictive RFC. (*Id.*) In sum, the ALJ did discuss what little evidence there was of Plaintiff's gait abnormality, including the evidence presented at Plaintiff's examination with Dr. Aleem. The Court finds that the ALJ's determination that the "limited objective findings regarding [Plaintiff's] physical impairments" and the overall "conservative treatment" of Plaintiff did not support Dr. Aleem's restrictive opinions as they pertained to Plaintiff's ability to lift, carry, manipulate, sit, stand, and walk (R. 547-49) was supported by substantial evidence. *See Baptist v. Kijakazi*, 74 F.4th 437, 445 (7th Cir. 2023) (holding that the ALJ provided sufficient support for affording treating physicians' opinions "little weight" because the ALJ discussed how the limitations within the medical source opinions were "irreconcilable" with "conservative treatment").

Further, Plaintiff contends "the ALJ pays lip-service to the impact of Plaintiff's obesity, [and] there is no actual explanation of how she factored his obesity into the equation of how long he can stand and walk," in contrast with Dr. Aleem's limitation to four hours sitting, one hour standing, and one hour walking total in an eight-hour workday. (Pl. Reply at 5.) But the ALJ explicitly noted, specific to Plaintiff's obesity, that "physical exams fail to document any significant gait abnormality, other than [Plaintiff] was using a single cane which was not prescribed, recent exams show normal strength, and the diagnostic imaging only shows mild findings." (R. 548.) Though Plaintiff dubs this "lip service," (Pl. Reply 5), ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category

7

of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell,* 97 F.4th at 1053. The Court finds the ALJ's discussion of Plaintiff's "BMIs over 30, including 40.28 in June 2022, which is consistent with obesity" (R. 548) met the minimal articulation requirement under *Warnell*.

Plaintiff admits the ALJ "is in no way required to accept the assessment of an examining physician." (Pl. Mem. at 10.) Yet Plaintiff's arguments essentially request that this Court weigh the evidence differently than the ALJ did when it comes to Dr. Aleem's assessment. The Court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez*, 96 F.4th at 1021 (internal quotations omitted). The ALJ was entitled to consider, and did consider, the "limited objective findings" of Plaintiff's physical impairments and that Plaintiff "had only conservative treatment of pain medication, a steroid injection to the right knee, knee brace, and physical therapy" for his impairments. (*See* R. 545-48.) The ALJ adequately explained that her review revealed that Dr. Aleem's own notes did not support the extent of the limitations assessed.

Overall, the ALJ provided specific examples of how Dr. Aleem's notes from the one-time examination of Plaintiff did not support the opinions purportedly formed *as a result* of that one-time examination. Accordingly, the ALJ did not err in assigning Dr. Aleem's opinion little weight based on the factor of supportability.

    ii. **Consistency**

Next, Plaintiff contends the ALJ erred by finding Dr. Aleem's assessed limitations inconsistent with the record. (Pl. Mem. at 11.) The consistency factor within 20 C.F.R. § 404.1520c provides, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more

8

persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Here, the ALJ determined Dr. Aleem's "opinion is based on a one-time examination that is not consistent with the longitudinal record, including June 2022 examination findings of full range of motion of all extremities, no extremity deformity, and normal gait without any indication of assistive device use." (R. 548.) In addition, the ALJ found that the opinions of the State agency medical consultants, other than Dr. Aleem, which assessed Plaintiff as having the capacity to engage in light work were "consistent with the September 2022 consultative examination findings [from Dr. Aleem] showing 5/5 strength." (R. 552.) The ALJ provided specific examples of how Dr. Aleem's assessed limitations were inconsistent with the record as a whole and with Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms.

  First, as to the record, the ALJ determined that Dr. Aleem's assessment of Plaintiff's stand/walk/sit limits and the opinion Plaintiff could never lift or carry more than 10 pounds were "not consistent with the longitudinal record" because Plaintiff had only received conservative treatment, reported improvements with physical therapy and brace use, and "the records do not consistently note that [Plaintiff] was using a cane, including no reported cane use in June 2022." (R. 548.) The ALJ compared Plaintiff's examination with Dr. Aleem against Plaintiff's overall course of treatment, which revealed that Plaintiff's "records show only conservative treatment and limited objective findings regarding [Plaintiff's] physical impairments." (R. 545.) The ALJ discussed that Plaintiff's 5/5 strength and full range of motion for all joints except the right knee as of September 2022 (R. 548) was consistent with the notes of a June 2022 exam which documented "only mild nonpitting peripheral edema, full range of motion of all extremities, no extremity deformity, intact extremity strength, and normal gait without any indication of assistive device use." (R. 547.) Additionally, the ALJ compared Dr. Aleem's restrictions against the

9

remainder of the record and found that "the imaging of record showing no more than mild findings does not support that the claimant can stand and walk only one of eight hours. Notably, there is no imaging of the lumbar spine supporting the opined sitting limitations." (R. 548.) And the ALJ ultimately concluded "there is little evidence to support limiting [Plaintiff] to less than standing/walking six hours in a workday or lifting/carrying less than 20 pounds occasionally and 10 pounds frequently" because Plaintiff "had only conservative treatment of pain medication, a steroid injection to the right knee, knee brace, and physical therapy." (*Id.*) *See Baptist*, 74 F.4th at 445. Accordingly, the ALJ's finding that the limitations assessed by Dr. Aleem were inconsistent with the remainder of the record, and particularly, Plaintiff's June 2022 exam, was supported by substantial evidence.

Turning next to the ALJ's comparison of Dr. Aleem's assessed limitations with Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, the ALJ found Plaintiff's "allegations regarding the severity and limiting effects of the impairments" were inconsistent with the objective record. (R. 548.) The ALJ listed a slew of examples which eroded Plaintiff's subjective allegations. (*Id.*) For example, Dr. Aleem opined Plaintiff could never lift or carry more than 10 pounds. (R. 1742.) But in his own testimony, Plaintiff discussed his ability to carry groceries for his mother while walking back from the store:

> Q: And where you were coming home, you were the one that was responsible for carrying the bags for your mom. Right?
>
> A: Most of them, yeah.

(R. 581.) The ALJ determined that Dr. Aleem's opined lifting/carrying limits for Plaintiff were inconsistent with Plaintiff's testimony at the hearing because:

> The evidence in the record further shows [Plaintiff] is active, as he helped his friend move, traveled, and completed cooking school. As noted in the Function Reports,

10

> he is able to take care of his personal care independently. [Plaintiff] further testified that he grocery shops with his mother, walks to the store, and carries bags.

(R. 548, citations omitted.)

The ALJ's review of the entire record and the additional examples in the ALJ's opinion reveal that the ALJ was comparing Dr. Aleem's treatment notes against each other, against the physical RFC form Dr. Aleem completed for Plaintiff, and against the remainder of the record, as required by the consistency factor when evaluating a medical source opinion. *See* 20 C.F.R. § 404.1520c(c)(2); *see also Bakke v. Kijakazi*, 62 F.4th 1061, 1068 (7th Cir. 2023) (finding the ALJ met the consistency prong by evaluating claimant's subjective statements against the treating physician records and the remainder of medical records). In sum, the ALJ examined Dr. Aleem's medical opinion for consistency with the record and properly gave Dr. Aleem's opinion little weight as a result.

Accordingly, the ALJ did not err in her evaluation of the medical opinion evidence from Dr. Aleem, and her evaluation was supported by substantial evidence.

## B. The RFC As Assessed by the ALJ Was Supported By Substantial Evidence.

Plaintiff lastly argues that "just looking at the reported findings that include decreased range of motion in the right knee, swelling/effusion; gross obesity; x-ray evidence of osteoarthritis; evidence of crepitus and patellar grind; the ALJ's RFC is not incompatible [sic] with such evidence." (Pl. Mem. at 6.) Though the Court suspects Plaintiff's statement that the RFC "is not incompatible" with the evidence (Pl. Mem. at 6) was a typographical error (where Plaintiff meant to say "compatible" instead of "incompatible"), the Court indeed finds that the RFC is compatible with the evidence of record. (*See* R. 545-48, noting Plaintiff's "full range of motion of all extremities, no extremity deformity, and normal gait without any indication of assistive device use" as of June 2022.) As the Court's discussion above reflects, the ALJ weighed Dr. Aleem's

11

RFC opinion against Dr. Aleem's own notes, Plaintiff's complaints, and the rest of the objective medical record and found that the severity of Plaintiff's impairments do not rise to the level of limiting his RFC to Dr. Aleem's more restrictive assessment. (R. 545-48.) The ALJ opinion therefore is supported by substantial evidence, in that the ALJ simply weighed the evidence within the medical record differently than Plaintiff prefers. The Court's review of the ALJ's opinion "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute its judgment for the ALJ's determination." *Chavez*, 96 F.4th at 1021 (internal quotations omitted).

The ALJ's RFC was supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's memorandum requesting the Court reverse and remand the ALJ's decision (D.E. 12) and grants Defendant's motion to affirm (D.E. 13).

**SO ORDERED.**

                  **ENTER:**

                  _____
                  **GABRIEL A. FUENTES**
                  **United States Magistrate Judge**

**DATED: February 25, 2025**